FILED
MAR 0 9 2007
[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER C. CRAWFORD, on behalf of himself and all others similarly situated in South Dakota<br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>NVIDIA CORPORATION; ATI TECHNOLOGIES, INC., ADVANCED MICRO DEVICES, INC.; and JOHN DOES 1-100,<br>　　　　　　　　Defendants. | Case No. 07-5019<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Christopher C. Crawford hereby brings this action on behalf of himself and all other similarly situated persons and entities who indirectly purchased graphics processing units and cards ("GPU") during a period beginning no later than December 1, 2002 and continuing to the present. Plaintiff seeks damages and other relief from Defendants' violations of the statutes of South Dakota, specifically, S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*, and S.D. Codified Laws Ann. § 37-24-6, as well as federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiff, upon personal knowledge as to his own acts and status, and upon information and belief as to all other matters, alleges the following:

### INTRODUCTION

1.　This case arises out of a long-running conspiracy extending from at least December 1, 2002 and continuing to the present (the "Class Period") among Defendants and their co-conspirators, with the purpose and effect of fixing prices, allocating market share, and committing other unlawful practices designed to inflate the prices of GPU sold indirectly to

Plaintiff and other purchasers in South Dakota. Plaintiff brings this Class Action pursuant to the statutes of South Dakota and the United States, specifically, S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*, and S.D. Codified Laws Ann. § 37-24-6, and Section 1 of the Sherman Act, 15 U.S.C. § 1, respectively.

  2. Defendants and their co-conspirators have formed an international cartel to illegally restrict competition in the GPU market, targeting and severely burdening consumers throughout the United States, including in South Dakota. The conspiracy has existed at least during the Class Period, and has affected billions of dollars of commerce for products commonly found in households and businesses throughout the United States, including South Dakota.

  3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants and their co-conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and coordinate price increases of GPU in South Dakota.

  4. The acts by Defendants in furtherance of the conspiracy have included the following wrongful conduct and horizontal agreements:

   (a) participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to prices for GPU;

   (b) participating in meetings and conversations in which Defendants and their co-conspirators allocated markets and customers for GPU;

   (c) participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to refrain from engaging in competitive bidding or to submit complementary and non-competitive bids for particular contracts to supply GPU and products containing GPU to various consumers;

   (d) exchanged sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

   (e) issuing price announcements, price quotations, and general price

increases in accordance with the pricing and market allocation agreements reached; and

(f)　facilitating, effectuating, implementing, monitoring, and concealing the contract, combination, and conspiracy to raise the prices of GPU sold.

## JURISDICTION AND VENUE

5.　Plaintiff brings this Class Action pursuant to S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*, and S.D. Codified Laws Ann. § 37-24-6.

6.　This Complaint is also filed under Section 16 of the Clayton Act, 15 U.S.C. § 26 to enjoin Defendants, and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy to restrain trade or commerce of GPU.

7.　This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. The matter in controversy exceeds $5,000,000 exclusive of interest and costs when the claims of individual class members are aggregated, and is between citizens of different states. Venue is proper in the United States District Court for the Western Division of South Dakota pursuant to 15 U.S.C. §15 and §22 and 28 U.S.C. §1391, as the Defendants reside, transact business or are found within this District, and/or a substantial part of the events giving rise to the Plaintiff's claims arose in this District.

8.　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 by virtue of Plaintiff's injunctive relief claims brought under the Clayton Act, 15 U.S.C. § 26. Jurisdiction is also proper under 28 U.S.C. § 1367 as all other claims arise from the same case or controversy as the Clayton Act claim.

9.　Personal jurisdiction comports with due process under the United States Constitution and South Dakota's long-arm statute.

10.　Without limiting the generality of the foregoing, Defendants (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of

3

such authority) have:

    (a)    transacted business in South Dakota;

    (b)    contracted to supply or obtain services or goods in South Dakota;

    (c)    availed themselves intentionally of the benefits of doing business in South Dakota;

    (d)    produced, promoted, sold, marketed, and/or distributed their products or services in South Dakota and, thereby, have purposefully profited from their access to South Dakota's markets;

    (e)    caused tortious damage by act or omission in South Dakota;

    (f)    caused tortious damage in South Dakota by acts or omissions committed outside such jurisdiction while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

    (g)    committed acts and omissions which Defendants knew or should have known would cause damage in South Dakota to Plaintiff and Class members while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

    (h)    engaged in a conspiracy with others doing business in South Dakota that caused tortious damage in South Dakota; and

    (i)    otherwise had the requisite minimum contacts with South Dakota obtaining the benefits of its laws and markets such that, under the circumstances, it is fair and reasonable to require Defendants to come to this Court to defend this action.

11. Plaintiff Christopher C. Crawford is a resident of South Dakota. In addition, a substantial part of the trade and commerce, as well as the arrangement, contract, agreement, trust, combination, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiff's claims, occurred within South Dakota, including, among other things, the indirect sale of GPU to Plaintiff and other members of the class at supra-competitive prices.

12. As a result of the manufacture, distribution, delivery and sale of Defendants' products to indirect purchasers within South Dakota, directly or through their subsidiaries,

affiliates or agents, Defendants obtained the benefits of the laws of South Dakota and the markets of South Dakota for their products.

## PARTIES

**A.     Plaintiff(s)**

13.     Plaintiff Christopher C. Crawford is a resident of Sturgis, South Dakota. During the time period covered in this Complaint, Plaintiff indirectly purchased GPU from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for GPU and has been injured by reason of the illegal conduct alleged herein.

**B.     Defendant(s)**

14.     Defendant Nvidia Corporation ("Nvidia") is incorporated in Delaware with its principal place of business at 2701 San Tomas Expressway, Santa Clara, California 95050. Defendant Nvidia produced, promoted, sold, marketed, and/or distributed GPU to consumers throughout the United States, including South Dakota, during the Class Period.

15.     Defendant ATI Technologies, Inc. ("ATI") is a Canadian corporation with its principal place of business at 1 Commerce Valley Drive East, Markham, Ontario, Canada L3T 7X6. Defendant ATI produced, promoted, sold, marketed, and/or distributed GPU to consumers throughout the United States, including South Dakota, during the Class Period.

16.     Defendant Advanced Micro Devices, Inc. ("AMD") is incorporated in Delaware with its principal place of business at One AMD Place, P.O. Box 3453, Sunnyvale, California 94088-3453. Defendant AMD, through its acquisition of Defendant ATI, produced, promoted, sold, marketed, and/or distributed GPU to consumers throughout the United States, including South Dakota, during the Class Period.

## ADDITIONAL DEFENDANTS

17. As additional information may come to light, Plaintiff reserves the right to add other Defendants as they become known to him.

18. The acts alleged in this Complaint were, upon information and belief, authorized, ordered or done by officers, agents, employees, or representatives of each Defendant while actively engaged in the management of its business or affairs.

## CO-CONSPIRATORS

19. Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiff, participated as co-conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

20. The true names and capacities, whether individual, corporate, associate, representative, or otherwise of defendants named herein as DOES 1 through 100 are unknown to Plaintiff at this time, and are therefore sued by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of DOES 1 through 100 when they become known to Plaintiff. Each of DOES 1 through 100 is in some manner legally responsible for the violations of law alleged herein.

21. The acts charged in this Complaint as having been done by Defendants and the DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

## CLASS ACTION ALLEGATIONS

22. This action is brought by Plaintiff on behalf of himself, and pursuant to Rule 23 of

the Federal Rules of Civil Procedure, as representative of a class ("the Class"). In particular, Plaintiff asserts that a class action is appropriate under Rule 23(b)(3).

23. The Class is defined as:

> All persons or entities residing in South Dakota who indirectly purchased GPU or products containing GPU manufactured and sold by one or more of the Defendants during the Class Period. Excluded from the Class are: all federal, state, or local governmental entities; Defendants' subsidiaries and affiliates; all persons who purchased GPU directly from any Defendant or from any other manufacturer of GPU.

24. Although the exact size of the Class is unknown, the total number of Class members is in the thousands as many South Dakota consumers have purchased GPU. Based upon the nature of the trade and commerce involved, joinder of all Class members would be impracticable.

25. Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no conflict with any other Class member and has retained competent counsel experienced in class action and antitrust litigation.

26. Common questions of law and fact exist, including:

    (a)    Whether Defendants conspired with each other and others to fix, raise, stabilize or maintain the prices of GPU;

    (b)    Whether Defendants' acts were unfair or deceptive;

    (c)    Whether the combination or conspiracy caused the prices of GPU to be higher than they would have been in the absence of Defendants' conduct;

    (d)    The operative time period for the conspiracy;

    (e)    Whether Defendants' conduct caused injury to the business or property of Plaintiff and the Class, and if so, the appropriate measure of damages;

    (f)    Whether Defendants actively concealed the violation alleged herein; and

    (g)    The appropriate nature of the class-wide equitable relief.

These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

27. Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein. The class action vehicle provides an efficient method for enforcement of the rights of the Plaintiff and the Class members, and such litigation can be fairly managed. Plaintiff knows of no unusual problems of management or notice.

28. It is desirable for the claims of the Plaintiff and the Class members to be adjudicated in a single proceeding to provide all claimants with a forum in which to seek redress for the violations of the laws of South Dakota and the United States.

29. The difficulties that may exist in the management of the class action are far outweighed by the benefits of the class action procedure.

## FACTUAL ALLEGATIONS

30. GPU are highly specialized semiconductors that increase the speed, complexity and visual quality of digital images that are displayed on graphical interfaces. GPU technology was introduced during the early 1960s in some of the earliest computer displays; however, it became more widely available during the early 1980s with the advent of the personal computer. GPU are now found in desktop and notebook computers including professional workstations, servers and home media personal computers and in consumer electronics such as personal digital assistants, mobile phones, digital televisions and game consoles.

31. Defendants sell GPU through various channels including to original equipment manufacturers, original design manufacturers, system integrators, motherboard manufacturers, add-in board manufacturers, and retail outlets. GPU may be integrated into a computer's motherboard by means of an expansion slot or it may be embedded into a video card within the computer itself. Usually, a GPU will be upgraded when configuring a purchase from a computer manufacturer or as an aftermarket purchase.

32. Defendants' GPU are incredibly prevalent - one can find Nvidia's products in the world's leading electronics including Apple Inc., Dell Inc., Fujitsu Limited, Siemens AG, Gateway Inc., Hewlett-Packard Company, Lenovo Group Limited, LG Electronics, Inc., MEDION AG, Mitsubishi Electric, Motorola Inc., MPC Corporation, NEC Group, Samsung Electronics Co. Ltd., Sony Electronics Inc., Sony Ericsson Mobile Communication AB and Toshiba Corporation. System builders such as Alienware, Falcon Northwest, HCL Technologies, SAHARA Computer (PTY) Ltd. and Shuttle Computer Group Inc. also use Nvidia GPU in their products. Defendant Nvidia's GPU are also used by leading add-in board and motherboard manufacturers including ASUSTek Computer Inc., BFG Technologies, EVGA Corporation, GIGABYTE Technology Co., Ltd., Micro-Star International Co., Ltd., Palit Microsystems, (HK) Ltd, Point of View, and XFX.

33. Defendants, as industry leaders, hold numerous patents, and also license their technology to smaller manufacturers based on Defendants' specifications in exchange for royalties. According to a Nvidia press release, companies that exclusively manufacturer GPU for Nvidia include: AOpen Inc., Abit Co., Ltd., PSA Walton Chaintech Corporation, Creative Technology Ltd, Gainward Co., Ltd., Gigabyte Technology, Co., Ltd., InnoVISION Multimedia Ltd., Leadtek Research, Inc., Micro-Star International Co., Ltd., Palit Microsystems, (HK) Ltd., PNY Technologies, Inc., SPARKLE Computer Co., Ltd., and TerraTec Electronic GmbH. Similarly, several companies manufacture video cards based on ATI specifications including Sapphire Inc., Diamond Multimedia Inc., PowerColor Computer Inc. and VisionTek, Inc. Only ASUSTek Computer Inc. manufacturers both Nvidia and ATI GPU.

34. The Defendants are leaders in the design and manufacture of GPU. Collectively, the Defendants own or control over 90% of the stand alone GPU that are available for purchase either as standalone video cards or in preassembled computers. According to industry reports, Nvidia alone

leads with a 55% share of the market.

35. In October 25, 2006, Defendant ATI merged with Defendant AMD, combining ATI's strengths in graphics, chipsets and consumer electronics with AMD's expertise in microprocessors. The merger was valued at $5.4 billion. Under the terms of the transaction, Defendant AMD acquired all of the outstanding common shares of Defendant ATI for a combination of approximately $4.3 billion in cash and 58 million shares of AMD common stock. All of ATI's patents and licensing agreements were transferred to AMD. With AMD's acquisition of ATI, AMD entered into the graphics processor business.

36. Defendant Nvidia states in its Amended Annual Report filed with the U.S. Securities and Exchange Commission on November 29, 2006, that it is the "worldwide leader in programmable graphics processor technologies." According to the report, Nvidia earned approximately $2.375 billion in revenues. The revenues from its GPU business increased by 22.6% to $1.7 billion for fiscal year 2006 compared to $1.4 billion for the previous fiscal year.

37. Defendant ATI also stated in its 2005 Annual Report that it is one of the world's leaders in graphics processor technology, earning $2.22 billion in revenues and selling 115 million units.

38. The GPU market is conducive to the kind of anticompetitive practices alleged in this Complaint. The market is oligopolistic and is characterized by high technological barriers to entry including research and development expenses and manufacturing costs. These high barriers to entry are in part due to the capital-intensive nature of the GPU industry and the high volumes of production required to achieve economies of scale.

39. Defendants have been able to exclude competition and maintain their monopoly over GPU by colluding and conspiring to fix, raise, maintain, and/or stabilize prices and royalties.

Defendants are thus able to charge supra-competitive prices for GPU. As a result of Defendants' misconduct and anti-competitive behavior, consumers have to pay supra-competitive prices for GPU.

40. The United States Department of Justice ("DOJ") recently launched an investigation into anticompetitive practices by GPU manufacturers. On or about November 30, 2006, the DOJ subpoenaed Defendants Nvidia and AMD.

41. Both AMD and Nvidia have publicly confirmed that they have received a subpoena in connection with potential antitrust violations related to graphic processors and cards. A spokesperson for Nvidia said that the DOJ requested records back to the 1990s, including market studies, volume price agreements and other documents. The spokesperson noted that "It's a fairly broad request."

42. Price fixing among manufacturers in the high-technology industry has also occurred in other product markets, as evidenced by the conspiracy in the Dynamic Random Access Memory market and the most recent alleged conspiracies in the Static Random Access Memory and Liquid Crystal Display markets. Because there are few suppliers in the chip industry and an open flow of communication between competitors, one industry analyst noted that "If the DOJ wanted to, it could just go down every line in the semiconductor industry and find the same issue."

## TRADE AND COMMERCE

43. The activities of Defendants and their Co-Conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the commerce of GPU throughout the United States, including South Dakota.

44. During the Class Period, Defendants manufactured and sold substantial quantities of GPU to businesses and consumers throughout the United States, including South Dakota. Those businesses resold and/or incorporated the GPU into other products including, but not

limited to, desktop and notebook computers including professional workstations, servers and home media personal computers and in consumer electronics such as personal digital assistants, mobile phones, digital televisions and game consoles and then marketed and sold those goods to businesses and consumers throughout the United States, including South Dakota.

45. The contract, combination, and conspiracy consists, upon information and belief, of a continuing agreement, understanding, and concert of action between and among Defendants and their Co-Conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases for the sale of GPU throughout the United States, including South Dakota.

46. The acts in furtherance of the conspiracy by Defendants have included, on information and belief, the following wrongful conduct and horizontal agreements:

 (a) participating in meetings and conversations on a periodic basis during the Class Period in which Defendants and their Co-Conspirators discussed and agreed to fix, raise, stabilize, and maintain the prices for GPU;

 (b) participating in meetings and conversations on a periodic basis during the Class Period in which Defendants and their Co-Conspirators discussed and agreed to allocate markets and customers for GPU;

 (c) participating in meetings and conversations on a periodic basis since at least during the Class Period in which Defendants and their Co-Conspirators discussed and agreed to refrain from engaging in competitive bidding, or to submit complementary and non-competitive bids, for particular contracts to supply GPU and/or products containing GPU to various customers;

 (d) exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

 (e) issuing price announcements, price quotations, and general price increases in accordance with the pricing and market

    allocation agreements reached; and

  (f) facilitating, effectuating, implementing, monitoring and concealing the contract, combination, and conspiracy to raise the prices of GPU sold.

47. For the purposes of formulating and effectuating the aforesaid contract, combination, and conspiracy, Defendants and their Co-Conspirators did those things which they conspired to do.

## IMPERMISSIBLE MARKET EFFECTS

48. The contract, combination, and conspiracy alleged herein had the following effects, among others:

  (a) prices paid by Plaintiff and the Class members for GPU and products containing GPU were fixed, raised, maintained, and stabilized at artificially high and noncompetitive levels;

  (b) indirect purchasers of GPU and products containing GPU were deprived of the benefits of free and open competition; and

  (c) competition between and among Defendants and their Co-Conspirators in the sale of GPU and/or products containing GPU was unreasonably restrained.

49. As a result, Plaintiff and the Class members have been injured in their businesses and property in that they have not only been deprived the benefits of fair and open competition on the merits but have paid more for GPU and/or products containing GPU than they otherwise would have paid in the absence of Defendants' unlawful contract, combination, and conspiracy.

## FRAUDULENT CONCEALMENT

50. Plaintiff hereby adopts and incorporates by this reference each of the preceding paragraphs as fully set forth herein.

51. Throughout the Class Period, Defendants and their Co-Conspirators engaged in a successful, illegal price-fixing conspiracy that was by its nature self-concealing and that effectively, affirmatively, and fraudulently concealed Defendants' unlawful combination,

conspiracy, and acts in furtherance thereof from Plaintiff and the Class members.

52. Although Plaintiff exercised due diligence throughout the Class Period, he could not have discovered Defendants' unlawful scheme and conspiracy at an earlier date because of Defendants' effective, affirmative, and fraudulent concealment of their activities. Defendants' wrongful conduct was carried out in part through means and methods that were designed and intended to avoid detection, and which in fact, successfully precluded detection.

53. Defendants' fraudulent concealment included public statements that falsely attributed wild price fluctuations of GPU to natural reasons such as seasonal ebb and flow and a highly competitive market. Defendants also instructed their United States entities to offer similar false reasons to explain price increases with to customers in United States, including South Dakota. In fact, those fluctuations were due to Defendants periodic withholding of the supply of GPU to create an artificial supply shortage, which in turn generated a level of artificial demand, driving up prices.

54. Plaintiff and the Class members had no reason to disbelieve Defendants' explanations of the pricing behavior of these products. Indeed, in some instances Defendants' explanations involved proprietary or otherwise non-public information within Defendants' exclusive control, leaving Plaintiff and the Class members without means to verify their accuracy. Plaintiff did not know nor could he have known that Defendants' prices for GPU were artificially inflated and maintained by virtue of Defendants' illegal price-fixing conspiracy and that Plaintiff and the Class members were paying higher prices for GPU and/or products containing GPU than they would have paid in a competitive market.

55. Plaintiff has exercised due diligence by promptly investigating the facts giving rise to the claims asserted herein upon having reasonable suspicion of the existence of

Defendants' conspiracy, and by seeking discovery as to the matters asserted herein, to the extent permitted by law.

## COUNT I
### (Violation of the South Dakota Antitrust, Deceptive Trade Practices, and Consumer Protection statutes)

56.   Plaintiff hereby adopts and incorporates by this reference each of the preceding paragraphs as fully set forth herein.

57.   Defendants' actions described herein constitute deceptive acts or practices in South Dakota that are actionable under S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*, and S.D. Codified Laws Ann. § 37-24-6.

58.   By reason of Defendants' deceptive acts or practices in South Dakota, Plaintiff and other Class members who indirectly purchased GPU have been injured because, among other reasons, they have paid more for GPU and/or products containing GPU than they would have paid in the absence of the Defendants' deceptive acts or practices.

59.   Plaintiff and Class Members in South Dakota have been and will continue to be injured in their business and property by Defendants' deceptive acts or practices.

60.   As a result of Defendants' deceptive acts or practices, Plaintiff and the Class have sustained damages in an amount to be determined at trial. Plaintiff and the Class members seek treble damages for their injuries caused by Defendants' deceptive acts or practices.

## COUNT II
### (Unjust Enrichment and Disgorgement of Profits)

61.   Plaintiff hereby adopts and incorporates by this reference each of the preceding paragraphs as fully set forth herein.

62.   Defendants benefited from their unlawful acts through the overpayment for GPU and products containing GPU by Plaintiff and the Class members. Under common law

principles of unjust enrichment it would be inequitable for Defendants to be permitted to retain the benefits of these overpayments, which were conferred by Plaintiff and Class members and retained by Defendants.

63. Plaintiff seeks disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

### COUNT III
### (Injunctive Relief for Violation of Clayton Act)

64. Plaintiff hereby adopts and incorporates by this reference each of the preceding paragraphs as fully set forth herein.

65. During the Class Period, Defendants have entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for GPU in South Dakota and throughout the United States.

66. Defendants' conduct in restraint of trade has the intent, and effect, of maintaining artificially high, and anticompetitive prices of GPU.

67. Defendants and their Co-Conspirators did and continue to do those things they have colluded and conspired to do, including, but not limited to, the allegations set forth herein.

68. Defendants' illegal combination and conspiracy as alleged herein has the effect of (i) restraining, suppressing and/or eliminating competition; (ii) artificially fixing, raising, maintaining, and/or stabilizing prices at high, supra-competitive levels; and (iii) depriving consumers of free and fair competition on the merits.

69. It is in the best interest of the public to enjoin, pursuant to the Clayton Act, 15 U.S.C. § 26, for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, Defendants and their officers, agents, employees, or representatives from engaging in the unlawful contract,

combination, and conspiracy in restraint of trade or commerce of GPU.

70. Plaintiff and the Class have and will continue to be injured by Defendants' conduct in violation of the antitrust laws of the United States and S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*, in the absence of injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, and respectfully requests the Court:

1. Certify this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Adjudge and decree that the unlawful conduct, contract, conspiracy or combination alleged herein:

    a. A deceptive act or practice in violation of S.D. Codified Laws Ann. §§ 37-1-3.1, *et seq.*, and S.D. Codified Laws Ann. § 37-24-6 identified in the First Count for Relief herein;

    b. Acts of unjust enrichment as set forth in the Second Count for Relief herein; and

    c. In violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3. Award Plaintiff and the Class members treble damages in an amount to be proved at trial as a result of the wrongful conduct alleged and costs of suit, including reasonable attorneys' fees, filing fees and reasonable costs of the action pursuant to SDCL § 37-1-14.3.

4. Award Plaintiff and Class members restitution and disgorgement of profits obtained by Defendants as a result of their violations of common law principles prohibiting their acts of unfair competition and acts of unjust enrichment;

5. Award Plaintiff and Class members the costs of the suit, including reasonable attorney's fees;

6.  Award Plaintiff and the Class members a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants, and their officers, agents, employees, or representatives from engaging in this unlawful contract, combination, and conspiracy in restraint of trade or commerce;

7.  Award Plaintiff and the Class members pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law; and

8.  Grant such other, further or different relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims for which he is entitled to a jury trial.

Dated this 9th day of March, 2007.

BANGS, McCULLEN, BUTLER,
FOYE & SIMMONS, L.L.P.

By:_____
Eric J. Pickar
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD 57709-2670
Telephone: (605) 343-1040
Facsimile: (605) 343-1503

and

David Boies, III
Timothy D. Battin
Ian Otto
Nathan Cihlar
Straus & Boies, LLP
4041 University Drive, Fifth Floor
Fairfax, Virginia 22030
Telephone: (703) 764-8700
Facsimile: (703) 764-8704

Attorneys for Plaintiff Class